# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

NATASHA BLACK, on behalf of her )
minor child T.E., )
)
    Plaintiff, )
)
v. )
) Case No. CV414-192
CAROLYN COLVIN, )
Acting Commisioner of )
Social Security, )
)
    Defendant. )

## REPORT AND RECOMMENDATION

Alleging disability due to attention-deficit, hyper-activity disorder (ADHD), learning disabilities, asthma, allergies, and behavioral problems, plaintiff Natasha Black, on behalf of her child, T.E., seeks judicial review of the Social Security Commissioner's denial of her application for Supplemental Security Income (SSI) benefits. Docs. 1; 17.[1] That denial followed her exhaustion of administrative remedies, so her claims are now ripe for judicial review.

---

[1] The Court is citing to the docket and page numbers imprinted by its docketing software. Those do not always line up with each paper document's printed pagination.

# I. GOVERNING STANDARDS

In social security cases, courts:

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the underage claimant. *T.R.C. ex rel Boyd v. Comm'r, Soc. Sec. Admin.*, 553 F. App'x 914, 919 (11th Cir. 2014). To meet that burden, she must:

> establish (1) whether the child is working; (2) whether the child has a severe impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the Listing of Impairments. 20 C.F.R. § 416.924(a).

*Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015).

To functionally equal an impairment in the List of Impairments, a claimant must have marked limitations in two domains or an

2

extreme limitation in one of the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being. *See id.* § 416.926a(b)(1), (d). A child's limitation is "marked" where it is "more than moderate," but "less than extreme" and "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i).

*T.R.C. ex rel. Boyd*, 553 F. App'x at 918. "Extreme" limitations, by contrast, interfere "very seriously" with a child's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

## II. BACKGROUND

T.E., 9 at the time of the administrative law judge's (ALJ) final decision denying benefits, doc. 13-2 at 48, claims difficulty in learning, speech, and attention span, as well as issues with asthma and allergies. Doc. 13-6 at 18. His mother reports that he cannot "attain his work" in school, is "real fidgety," and "has these outbursts." Doc. 13-2 at 59. T.E. has trouble focusing and "requires so much help with [his] homework." *Id.* at 60. Although he advanced to third grade after Black refused to allow him to repeat second grade a second time, she believes the

3

school padded his grades in order to justify advancing him. *Id.* at 60-61.

Black testified that T.E. "cannot read," but "can repeat some sight words." *Id.* at 61. Without her there to "redirect him," T.E. "cannot even get dressed in the mornings," nor can he "clean himself properly." *Id.* at 61-62. Many days he never makes it to school because of asthma attacks, abdominal pain attacks, or, says Black, because "he gets suicidal" over the thought of dealing with his teachers who "are mentally messing with him." *Id.* at 63.

Nor, according to Black, does T.E. "hang out with kids his age," instead opting for the companionship of "kids that are like one and two." *Id.* at 68. Consequently, "he doesn't have friends." *Id.* at 69. She also reports that T.E. is violent. *Id.* at 70. He once "drew a knife" on Black's other children, once choked a dog that "wasn't doing anything to him," *id.*, and once "killed some fish." *Id.* at 73. Although he has never threatened Black, she fears for her children's safety and worries that T.E. is on the path to becoming a "mass murderer[]." *Id.* at 75. Medication sometimes helps, but the improvement is usually short-lived. *Id.* at 73

T.E. also testified at the hearing. He reported that "he just had

fun" with kids at school, three of which he considered friends, though he admitted spending no time outside of school with them. *Id.* at 50-52. He also admitted to pulling a knife on his sister, but insisted he "didn't hurt her." *Id.* at 54. He denied killing fish, choking a dog, or otherwise behaving violently with animals. *Id.* at 55-56. T.E. couldn't remember if his mother made him take medicine before school, but stated that the medicine to help him focus "works." *Id.* at 56.

T.E. filed for SSI benefits on September 28, 2009 (docs. 17 at 1; 13-2 at 16), alleging a disability onset of March 30, 2003. Doc. 13-2 at 13. Following administrative denial, the ALJ held a hearing on July 25, 2012 at Black's request, but later denied T.E.'s application. *Id.*

After finding that T.E. had not engaged in substantial gainful activity since the onset of disability (step 1 satisfed), the ALJ determined that his ADHD and learning disability qualified as severe impairments (step 2 satisfed). *Id.* at 16. They did not, however, meet or medically equal the severity of a listed condition in 20 C.F.R. §§ 924-26. *Id.* At step 3, because T.E.'s impairments did not result in "marked" limitations in two of six functional domains or an "extreme" limitation in one domain,

the ALJ found no functional equality to a listed condition, and thus no disability. *Id.* at 18, 36.

## III. ANALYSIS

Black argues on appeal that: (1) the ALJ improperly rejected the opinion of T.E.'s treating physician, Dr. Doris Greenberg, a board-certified developmental and behavioral pediatrician, doc. 17 at 13; and (2) the ALJ erred by discounting and misstating the opinions of T.E.'s teachers, which, says Black, support Dr. Greenberg's disabling limitations' findings. *Id.* at 20. Both are discussed in turn, but, as the Commissioner correctly notes, both are without merit.

### A. Dr. Greenberg's Opinion

Black criticizes the ALJ's (1) alleged failure to consider Dr. Greenberg's 2008 treatment note; (2) rejection of certain diagnoses by Dr. Greenberg; (3) selective citation of record evidence indicating improvement in T.E.'s impairments; (4) finding that Dr. Greenberg's treatment notes indicate physical examinations of T.E. but no interviews; (5) dismissal of certain Greenberg conclusions because her physician's assistant conducted the evaluations; and (6) dismissal of Dr. Greenberg's

6

opinions as based on "the exaggerated allegations of [Black]." Doc. 17 at 13-20. The government rebuts each of those arguments and contends that the ALJ properly discounted Dr. Greenberg's opinion. *See* doc. 19 at 5-13.

An ALJ must accord substantial weight to the opinion, diagnosis, and medical evidence of a treating physician like Dr. Greenberg unless there is good cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1336, 1440 (11th Cir. 1997); *Farkas v. Astrue*, 2012 WL 750547 at * 6 (M.D. Fla. Mar. 8, 2012). Good cause exists when:

> (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir.2004). Therefore, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

*Farkas*, 2012 WL 750547 at * 6. As a general rule, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists

are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006).

Good cause and substantial evidence support the ALJ's decision to discount Dr. Greenberg's opinion. To begin, her diagnoses of bipolar disorder, opposition defiant disorder (ODD), and several others discounted by the ALJ,[1] all lack a clinical evidentiary foundation. As the ALJ explained: "The Record is absent any psychological or educational testing conducted by Dr. Greenberg,[2] and absent any indication that the claimant was interviewed for clinical signs related to these diagnoses.

---

[1] *See* docs. 13-8 at 10 (2008 treatment notes); 13-9 at 48 ("To whom it may concern" letter); 13-9 at 75, 79 (February and July 2011 treatment notes).

[2] Black, as noted above, argues that the ALJ improperly dismissed Greenberg's opinion based, at least in part, on the mistaken conclusion that she never performed psychological testing on T.E. Doc. 17 at 15. Black notes that Greenberg ordered testing through Coastal Psychology in 2010 and referred T.E. to another psychologist for testing in 2011. *Id.* Even if the ALJ incorrectly concluded that Greenberg never analyzed testing data in diagnosing T.E. with ODD and bipolar disorders, that has no effect on the ALJ's other reasons to reject Greenberg's diagnoses. It remains true that the ALJ properly discredited conclusions based on Black's self-reports, just as it remains the case that no other medical professional concurred with Greenberg's diagnoses. Those reasons alone -- not to mention that the testing Black highlights never suggests ODD or bipolar diagnoses -- support findings contrary to Greenberg's and thus provide good cause to reject her opinion. *Farkas*, 2012 WL 750547 at *6.

These diagnoses do not align with the diagnoses made by Dr. Branch[3] as described above and are not evidenced by any prior or subsequent provider." Doc. 13-2 at 25 (cite omitted, footnote added). The ALJ further noted that:

> the treatment notes from both Dr. Greenberg and her PA [physician's assistant] indicate only physical examinations of the claimant with interviews of the mother or grandmother regarding his symptoms. Treatment notes do not indicate any psychological testing or interviews of the claimant himself regarding his symptoms, leading the undersigned to question the basis for the diagnoses of ODD, CD, and Bipolar Disorder, which are not diagnosed by any other provider. Additionally, no report of clinical signs support these diagnoses except the observations of the PA. . .

Doc. 13-2 at 26 (discussing doc. 13-9 at 79); *see also Crawford v. Comm'r Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (ALJ's rejection of treating physician's opinion supported by substantial evidence because it was "based primarily" on the claimant's subjective complaints and lacked supporting clinical data).

The ALJ also properly discounted a 2011 psychological evaluation Dr. Greenberg ordered in which a psychologist administered several

---

[3] Dr. Walter Branch (Ph.D.), a licensed psychologist, treated T.E. throughout 2008 and at least twice in 2009. *See* doc. 13-8 at 20-32 (Dr. Branch's progress notes for each session with T.E.).

behavioral tests.[4] *See* doc. 13-9 at 62-66. The results of the Conners' 3 Parent/Teacher Rating Scale were based purely on responses provided by Black (*see id.* at 63), and so the "assessment [was] subjective and provided no additional insight." Doc. 13-2 at 26; *see Crawford*, 363 F.3d at 1159. The same is true for the Burks Behavior Rating Scale results (doc. 13-9 at 64), while the Gordon Diagnostic System ("GDS") results provided only correlational (it expressly disclaimed causality) data points suggesting a possible ADHD diagnosis,[5] but nothing about any functional limitations. *See id.* Because the GDS results consisted of raw data without analysis, the ALJ was permitted to afford it little weight. *See* doc. 13-2 at 26; *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (ALJ's generally are not competent to interpret raw data, which typically "demand[s] review by a medical professional").

---

[4] Black correctly notes that the ALJ incorrectly attributed the evaluation to Dr. Greenberg, when in fact Dr. Emil Karp, a psychologist, administered the tests and created the report. *See* doc. 13-9 at 62-67. That misattribution, however, has no impact on whether the ALJ erred by rejecting Greenberg's opinion. Contrary evidence, and thus good cause to reject Greenberg's overall opinion, exists that has nothing to do with the 2011 evaluation Karp conducted at Greenberg's behest.

[5] Regardless of the weight given the GDS, the ALJ ultimately found that T.E.'s ADHD constituted a severe impairment, just not one that functionally equaled a listed condition. Doc. 13-2 at 16.

Dr. Greenberg's 2012 functional capacity assessment (doc. 13-10 at 123-25) -- in which she found marked limitations in the attending and completing tasks domain and an extreme impairment in health and well-being based on his penchant for violence -- scored poorly in the ALJ's eyes. He afforded it no weight because it was "based on the exaggerated allegations of [Black], which are contradicted by school officials, classroom teachers and school psychologists."[6] Doc. 13-2 at 27 (citing docs 13-7 at 39 (individual education plan (IEP) noting progress in school); 13-6 at 86-87 (2010 teacher questionnaire noting relatively few limitations in social functioning and self-care)); *see Hicks v. Comm'r Soc. Sec.*, 479 F. App'x 294, 296 (11th Cir. 2012) (evidence of symptom improvement based on treatment supported ALJ's decision to discount treating source opinion).[7] Whether or not the Court agrees with the ALJ's decision, the

---

[6] Like the ALJ, a disability evaluation conducted in 2011 by a doctor, psychologist, and speech pathologist also found "credibility issues" with Black's aggressive behavior reports because the evaluators observed T.E. "as well behaved and [lacking] functional limitations in social [domains]," as well as "able to make and maintain friends, respect authority and follow rules." Doc. 13-9 at 55.

[7] Particular to Dr. Greenberg's extreme limitation finding for the health and well-being domain, the ALJ noted contrary evidence suggesting that Black exaggerated the limitations she reported (which, again, formed the basis for Greenberg's extreme limitation conclusion). *See, e.g.*, doc. 13-7 at 79 (2010 school psychological evaluation indicating that T.E. "exudes excitement, willingness, and

record contains ample support for his conclusions. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (courts review ALJ decisions only to ensure substantial evidence supports them, not to correct perceived evidentiary weighting errors). Black's arguments to the contrary simply invite prohibited evidence reweighing in disguise.

The opinions of non-treating, examining physicians also justify rejecting Dr. Greenberg's opinion. In 2009, clinical psychologist Devorah Giffen assessed T.E. and found that although he had a poor attention span, reading skills, and somewhat poor processing capabilities, he "was well groomed, neatly dressed, and . . . was trusting and friendly in manner." Doc. 13-9 at 41. Giffen stated that two years before her evaluation, Black reported that T.E "was overly active, aggressive, disruptive and defiant," but that as of 2009, he had "settled down and th[o]se acting out behaviors [were] no longer a major concern." *Id.* at 44. As the ALJ noted, Giffen's report is consistent with other objective evidence in the record (*see, e.g.*, doc. 13-8 at 20-32) and is contradicted

---

enthusiasm to learn," "respects adults and is friendly in class," and "was very polite and well-mannered throughout all testing sessions," which produced results "viewed to be a valid representation of [T.E.'s] present levels of performance and current levels of psychological functioning").

only by Black's unsubstantiated and self-serving reports, which themselves undergird Dr. Greenberg's opinion. Because the report was "based on a thorough evaluation of [T.E.], including objective psychological testing and observation of clinical signs in direct interaction with [T.E.]," the ALJ afforded it "great weight." Doc. 13-2 at 28. And because Dr. Greenberg's opinion was inconsistent with Giffen's and other examining physicians' thorough clinical assessments, [8] substantial evidence supports the ALJ's decision to discount Greenberg's. *See Hicks*, 479 F. App'x at 296-97 (ALJ properly discounted treating physician opinion where it "was inconsistent with the assessments of other physicians," including consultative examiners).

Black's objections to the contrary fail. First, the ALJ's mistaken belief that Dr. Greenberg's treatment records only began in 2009, not 2008 as the record shows, does not warrant remand because the weight he gave to Greenberg's opinion in no way related to when T.E.'s treatment began. Second, her criticism of the ALJ's evidence citations (doc. 17 at 16) amounts to nothing more than prohibited evidence re-weighing.

---

[8] *See, e.g.*, doc 13-8 at 100-05 (childhood disability evaluation conducted by Dr. Eva Harris, MD, Dr. Celine Payne-Gair, Ph.D, and speech pathologist Patty Higgins)

13

Even when evidence exists that supports a disability finding, this Court must affirm an ALJ's conclusions if, as here, substantial evidence supports them. *See Mitchell*, 771 F.3d at 782.

Black's contention that the ALJ improperly rejected a Greenberg opinion as "offered by [her physician's assistant]" (doc. 13-2 at 27), also has no merit. Contrary to Black's assertion, the opinion *was* offered by Greenberg's PA, not Greenberg. And PA's unquestionably are, as the ALJ noted, unacceptable sources for disability opinions, *see* 20 C.F.R. § 416.913(a); *Crawford*, 363 F.3d at 1160 (unacceptable medical sources' opinions cannot establishment a claimant's impairment), although regulations allow their opinions to help establish impairment severity (which the ALJ found here). *See* 20 C.F.R. § 416.913(d)(1).

Finally, Black argues that Greenberg's opinions should not be discounted just because her parental reports contributed to their formation. As with so much else she offers, this argument is nothing more than evidence reweighing. Moreover, ALJ's may reject treating physician opinions supported primarily by a claimant's subjective complaints and contradicted by other clinical evidence. *See Crawford*,

14

363 F.3d at 1160. The ALJ here did nothing more than what's allowed. Good cause supported by substantial evidence existed to reject Greenberg's opinion and this Court therefore cannot disturb it.

## B. Teacher Assessments

Black next faults the ALJ's alleged rejection of one teacher's opinion and mischaracterization of another's. *See* doc. 17 at 21-25. She points out that T.E.'s first grade teacher, Ms. Pevey, indicated that he did not perform "any activities of acquiring and using information independently," and "needs one-on-one support most of the day." *Id.* at 21. Yet, Black says, the ALJ "assigned little weight" to Pevey's opinion because of "evidence of [T.E.'s] subsequent progress . . . with expected continuation of [that] progress with continued intervention." According to Black, that's a "gross misstatement of the actual facts" that merits remand.

Black also contends the ALJ ignored the opinion of Stacey Hodgdon, T.E.'s second grade special-education teacher. *Id.* at 24. Hodgdon opined that T.E. had "serious and obvious problems in all . . . areas of attending and completing tasks," and "serious" and "obvious" problems

in a number of other areas as well. *Id.* at 22. But, says Black, the ALJ "failed to acknowledge that Ms. Hodgdon's assessment was not inconsistent with Dr. Greenberg's opinions." *Id.* at 24. Although "teacher's opinions are not given the special weight awarded physician's opinions," Black believes that "common sense dictates" that Hodgdon's opinion "must at least be weighed." *Id.* at 25.

Common sense is not the standard by which this Court evaluates the Commissioner's decisions. Substantial evidence is. *See Mitchell*, 771 F.3d at 782. And substantial evidence supports the ALJ's conclusions, which, incidentally, took account of both Pevey and Hodgdon's questionnaires. *See* doc. 13-2 at 21, 22-23.

## IV. CONCLUSION

The ALJ's conclusion that T.E. is "not disabled," doc. 13-2 at 36, therefore should be affirmed and this case **DISMISSED WITH PREJUDICE.**

**SO REPORTED AND RECOMMENDED**, this 12th day of November, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**